**AKRON POLYMER CONTAINER CORPORATION, Plaintiff–Appellee,**

**and**

**Robert Winer, Counterdefendant,**

**v.**

**EXXEL CONTAINER, INC., Defendant–Appellant.**

No. 97–1438.

United States Court of Appeals, Federal Circuit.

July 20, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Aug. 26, 1998.

to be determined at the conclusion of this appeal.

In a nutshell, Exxel submits that the district court erred in its decision that the facts prove that Exxel's predecessor-in-interest intended to deceive the PTO during prosecution of the '829 patent. Exxel also argues that the district court erred in finding this case "exceptional" under section 285, for purposes of awarding attorney fees to Akron Polymer. Because we agree with Exxel, we reverse the judgments of the district court and remand for further proceedings.

I

Akron Polymer filed suit against Exxel in March 1992, seeking a declaratory judgment that Akron Polymer's nonaerosol dispenser product does not infringe claim 39 of the '829 patent. Exxel filed a counterclaim, asserting infringement of claim 39. On cross motions for summary judgment on the issue of infringement, the district court held that claim 39 reads on the accused product. The district court then granted Akron Polymer's motion for leave to amend its complaint to raise the allegation that the '829 patent is unenforceable for having been obtained by inequitable conduct.

The basis for Akron Polymer's allegation of inequitable conduct is as follows. The application that became the '829 patent (the "Katz application") was filed on August 23, 1980. Another application covering quite similar subject matter (the "Venus application") was filed on December 16, 1980. Both applications were assigned to Container Industries, Inc. ("Container"), Exxel's predecessor-in-interest. United States Patent No. 4,387,833 ("the '833 patent") issued out of the Venus application before the '829 patent issued out of the Katz application. Both applications were prosecuted before different examiners in the PTO by the same law firm, the responsible lawyers in which were fully aware of the existence and details of both applications. Although the law firm disclosed the existence of the Katz application to the Venus application examiner, the existence of the Venus application was not disclosed to the Katz application examiner until after the PTO had issued a notice of allow-

Kenneth A. Godlewski, Oldham & Oldham Co., L.P.A., Akron, Ohio, argued for plaintiff–appellee. With him on the brief was Bruce H. Wilson.

Thomas G. Carulli, Cooper & Dunham LLP, New York City, argued for defendant–appellant. With him on the brief were Robert D. Katz and Wendy E. Miller.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Exxel Container, Inc. ("Exxel") appeals from the May 1, 1997, final judgments of the United States District Court for the Northern District of Ohio in *Akron Polymer Container Corp. v. Exxel Container, Inc.*, No. 92–CV–0561. One judgment held that Exxel is responsible for inequitable conduct before the United States Patent and Trademark Office ("PTO") in the prosecution of the application which led to U.S. Patent No. 4,423,-829 ("the '829 patent"). That holding renders the '829 patent unenforceable against the world, and consequently defeats Exxel's counterclaim against Akron Polymer Container Corporation ("Akron Polymer") for infringement of the claims in the '829 patent. The second judgment held that Exxel's inequitable conduct causes the suit to be an "exceptional case[ ]" within the meaning of 35 U.S.C. § 285 (1994), entitling Akron Polymer to an award of its attorney fees, in an amount

ance for the Katz application. Akron Polymer argued that the Venus application is material information to the Katz application, and that Container's failure to disclose the Venus application proved Container's deceitful intent in prosecution of the Katz application.

The district court conducted a two-day bench trial on the issue of inequitable conduct, at the end of which the court concluded that the Venus application was not material, because it was not prior art to the Katz application, and therefore could not form a predicate for a judgment of inequitable conduct. The district court also determined that the evidence of record failed to support a finding of culpable intent on the part of Exxel.

With regard to the element of intent, the district court recited the facts alleged by Akron Polymer as to the knowing joint prosecution of the two applications by the same attorneys. The court also noted that a possible motive for the alleged misconduct could have been the applicant's desire to "extend its monopoly over the basic invention (the Katz '829 patent) longer than the monopoly over the improvement (the Venus '833 patent)." Against that "sinister interpretation" of the facts, the district court balanced the fact that Container's attorney "did disclose the Katz Application to the Venus examiner, albeit somewhat late in the game." In conclusion, the district court found that only inferences of deceitful intent could be drawn from the joint prosecution of both applications by the same attorneys. Against those inferences stood the fact that copendency of the two applications had been disclosed at least to the examiner of the Venus application.

Citing our decision in *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1417, 5 U.S.P.Q.2d 1112, 1117 (Fed.Cir.1987), in which we stated that "[a]n inference can and often must be drawn from established facts and direct proof of wrongful intent is not required, but drawing an inference on an inference on an inference is not the role of the fact finder," the district court ruled that Akron Polymer had failed to produce clear and convincing evidence that Container had any intent to de-

ceive in failing to disclose the Venus application to the Katz application examiner.

On appeal to this court, we affirmed the judgment of infringement. *See Akron Polymer Container Corp. v. Exxel Container, Inc.*, Nos. 95–1023, –1035, 1995 WL 620148, at *6, 40 U.S.P.Q.2d 1265, 1269–70 (Fed.Cir. Oct.20, 1995) (nonprecedential) (reported in table format at 69 F.3d 554). With regard to the issue of inequitable conduct, we noted that "[b]oth the parties and the district court appear to have assumed, quite incorrectly, that only prior art can be a material reference." *Id.* at *5, 40 U.S.P.Q.2d at 1269. Materiality instead embraces *"any* information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." *Id.* at *5, 40 U.S.P.Q.2d at 1269. In the light of the considerable overlapping content in the specifications and claims of the two applications, we concluded that the Venus application was highly material to the prosecution of the '829 patent, because it could have conceivably served as the basis of a double patenting rejection. We therefore vacated the judgment of no unenforceability and remanded the case for further proceedings on the issue of inequitable conduct. *See id.* at *1, 40 U.S.P.Q.2d at 1266.

## II

On October 17, 1996, the district court on remand conducted a further one-day bench trial on Akron Polymer's defense of inequitable conduct. As a result of that trial, the record was further amplified in two respects. First, certain memoranda from the files of the prosecuting attorneys were put in evidence. For the most part, those memoranda provided further evidence of the knowledge of the attorneys of the joint prosecution, and the commonality of the subject matter of the two applications. The second respect in which the record was amplified was through the testimony of two witnesses, Messrs. Robert Bregman and Richard Ruhe, neither of whom had any knowledge concerning prosecution of the Katz or Venus applications.

■ The governing law, as recited by the district court, is summarized in our decision in *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 17 U.S.P.Q.2d 1834 (Fed.Cir.1991). Proof of inequitable conduct entails a two-step analysis. *See id.* at 1439, 925 F.2d 1435, 17 U.S.P.Q.2d at 1838. First, the district court decides whether there is clear and convincing evidence of facts supporting a threshold showing of both materiality with regard to the omitted information, and of deceptive intent in the withholding of the information. *See id.* at 1438, 925 F.2d 1435, 17 USPQ2d at 1838. And, second, in balancing the degrees of materiality and intent, the district court, in the sound exercise of its equitable discretion, decides whether inequitable conduct has occurred. *See id.* at 1439–40, 925 F.2d 1435, 17 U.S.P.Q.2d at 1838. In particular, we noted that "[t]he more material the omission, the less culpable the intent required, and vice versa." *Id.* at 1439, 925 F.2d 1435, 17 U.S.P.Q.2d at 1838. The governing law also includes a specific dictate concerning the element of intent: the challenged "conduct must be sufficient to require a finding of deceitful intent *in the light of all the circumstances.*" *Kingsdown Med. Consultants v. Hollister, Inc.*, 863 F.2d 867, 873, 9 U.S.P.Q.2d 1384, 1389 (Fed.Cir.1988) (emphasis added).

On January 21, 1997, the district court entered an opinion containing its findings of fact and conclusions of law: by showing that Exxel's predecessor, Container, had failed to disclose the existence of the Venus application to the examiner of the Katz application, Akron Polymer had, by clear and convincing evidence, satisfied the threshold showing of intent to mislead the PTO, and Akron Polymer had proved inequitable conduct in the prosecution of the '829 patent on balance of the deceitful intent and high materiality of the nondisclosed application. In short, the district court held that the '829 patent is unenforceable for inequitable conduct.

## III

Exxel's appeal, over which we have jurisdiction under 28 U.S.C. § 1295(a)(1) (1994), asserts that the district court committed clear error in its factual finding of a threshold level of deceitful intent. Exxel also urges us to reverse the district court's determination that this is an exceptional case warranting imposition of Akron Polymer's attorney fees on Exxel, whether or not we conclude that clear error necessitates reversal of the unenforceability judgment.

## IV

■ Inequitable conduct is an offense against the PTO and the public. The offense is committed most commonly by intentional failures to submit material references to an examiner, or by making knowing false or misleading statements to the examiner, such that it can confidently be said that by deceitful intent the patent prosecution process has been subverted. Although the conduct giving rise to judgments of unenforceability thus occurs before the examiner, the offense deserves its penalty because the processes of the PTO have been transgressed.

The remand decision of the district court extensively catalogues the facts concerning prosecution of the Katz and Venus applications. The district court's finding of intent to deceive is based on several facts identified in the district court's opinion. Taken together, the facts show that the same law firm and the same attorneys prosecuted both applications, and that those attorneys were aware of the similarity of the inventions disclosed in the two applications. Indeed, the facts support inferences that the prosecuting attorneys were aware of the overlap of the two applications and the possible consequences should the PTO find the inventions not patentably distinct.

The district court's findings of fact enumerate the many occasions during the prosecution of the Katz application when disclosure of the Venus application could have been, but was not, made to the examiner. From the facts taken as a whole, the district court concluded that Container's failure to disclose the Venus application arose from deceitful intent.

■ The district court noted, but gave no weight, to the fact that Container *did* disclose the existence of the Katz application to the Venus application's examiner, and thus

put the PTO on notice of the copendency of the two applications. This undisputed fact sponsors Exxel's main argument as to why the judgment of unenforceability is incorrect. Exxel contends, we think convincingly, that it hardly could be seeking to deceive the PTO as to the existence of copending applications when it actually disclosed the fact of copendency to the Venus examiner.

As we have noted before, the facts in inequitable conduct cases rarely, if ever, include direct evidence of admitted deceitful conduct. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180, 33 U.S.P.Q.2d 1823, 1828–29 (Fed. Cir.1995). The intent element of the offense is thus in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred. But for the fact that Container actually disclosed the fact of copendency of the two applications to the PTO, while still failing to disclose the Venus application to the Katz application's examiner, it could be argued that the other facts in this case are sufficient to support a threshold finding of deceitful intent by clear and convincing evidence. Our confidence in such a conclusion is undermined, however, when we afford weight to the inference running contrary to deceitful intent that must be drawn from Container's disclosure of the Katz application to the Venus application's examiner.

■ The clear error in this case is the absence of the requisite weight that must be given to Container's disclosure of the Katz application, and of the fact of the copendency of the two applications, to the PTO through the Venus application's examiner. This fact points away from an intent to deceive. When examining intent to deceive, a court must weigh all the evidence, including evidence of good faith. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1580, 42 U.S.P.Q.2d 1378, 1384 (Fed. Cir.1997). Thus, when we measure the facts of record, we conclude that a threshold level of deceitful intent has not been shown.

Without a factual basis to establish a threshold level of deceitful intent, the inequitable conduct analysis is at an end, and we must conclude that the district court abused its discretion by entry of its judgment of unenforceability. And without a basis to support the judgment of unenforceability, there is no foundation on which to conclude that this is an exceptional case under section 285.

## Conclusion

The judgments of the district court in this case are therefore reversed, and the case is remanded to the district court in order to conclude the proceedings relating to the issue of infringement.

## Costs

No costs.

*REVERSED AND REMANDED.*