The LI SECOND FAMILY LIMITED PARTNERSHIP, Plaintiff–Appellant,

v.

TOSHIBA CORPORATION and Toshiba America Electronic Components, Inc., Defendants–Appellees.

No. 99–1451.

United States Court of Appeals, Federal Circuit.

Decided Nov. 8, 2000.

Rehearing and Rehearing En Banc Denied Jan. 9, 2001.*

---

* Judge Linn did not participate in the vote.

Rolf O. Stadheim, Stadheim & Grear, Ltd., of Chicago, Illinois, argued for plaintiff appellant. With him on the brief was Joseph A. Grear. Of counsel on the brief was Amy S. Owen, Miles & Stockbridge, of McLean, Virginia.

Arthur I. Neustadt, Oblon, Spivak, McClelland, Maier & Neustadt, P.C., of Arlington, Virginia, argued for defendants-appellees. With him on the brief was Carl E. Schlier. Of counsel on the brief were Ronald L. Yin and Stephen M. Everett, Limbach & Limbach L.L.P., of San Francisco, California.

Before PLAGER, CLEVENGER, and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

The Li Second Family Limited Partnership (Li)[1] filed a patent infringement suit in the United States District Court for the Eastern District of Virginia against Toshiba Corporation and Toshiba America Electronic Components, Inc. (collectively Toshiba). Li alleged that Toshiba makes semiconductor devices using a process that infringes several claims of Li's U.S. Patent No. 4,946,800 (the '800 patent). Among its defenses, Toshiba alleged that the '800 patent is unenforceable because Li and his attorney engaged in inequitable conduct before the United States Patent and Trademark Office (PTO). After a bench trial on the issue, the district court agreed with Toshiba and concluded that the '800 patent is unenforceable due to inequitable conduct. *Li Second Family Ltd. P'ship v. Toshiba Corp.*, No. 97–306–A (E.D.Va. May 19, 1999) (memorandum opinion and order). Because the district court did not abuse its discretion in holding the '800 patent unenforceable, we affirm.

## BACKGROUND

### 1.

Li owns several patents, including the '800 patent and a related patent, U.S. Patent No. 4,916,513 (the '513 patent), in the area of semiconductor technology. Toshiba's inequitable conduct claim arises from Li's alleged failure to disclose to the examiner of the application that resulted in the '800 patent events that occurred during prosecution of the application that resulted in the '513 patent.

The '800 patent issued in 1990 from application Serial No. 05/386,102 (the '102 application), which was filed in 1973 as a continuation-in-part (CIP) of a now-abandoned 1971 application, Serial No. 05/154,-300 (the '300 application). The '513 patent issued in 1990 from application Serial No. 05/838,758 (the '758 application), which was filed in 1977, also as a CIP of the '300 application. The '102 and '758 applications were assigned to different examiners at the PTO—the '102 application to Examiner Saba, and the '758 application to Examiner Larkins. The '300 application itself was a CIP of a 1968 application that issued in 1971 as U.S. Patent No. 3,585,714 (the '714 patent), which in turn was a CIP of a 1965

---

1. Chou H. Li, the inventor of the patent at issue and other related patents, is the sole general partner of The Li Second Family Partnership, the appellant in this case. This opinion refers to both the inventor and the appellant, the owner of the patents discussed herein, as "Li."

application that issued in 1969 as U.S. Patent No. 3,430,109 (the '109 patent).

The '800 patent is directed to a method for making a semiconductor device with isolation grooves used to separate regions of the device. More specifically, the '800 patent claims a method for making a semiconductor device by forming a semiconductor material substrate of one conductivity type (e.g., P-type); forming on the substrate a semiconductor material body of the opposite conductivity type (e.g., N-type), thus creating a PN junction; and forming an isolation groove in the body extending at least to the PN junction. All claims of the '800 patent include two important limitations: the bottom of the groove must be within 0.1 microns of the PN junction (the "0.1 micron" limitation), and the PN junction must meet the groove at a curved portion of the groove (the "rounding" limitation).

The '513 patent covers subject matter similar to that of the '800 patent, but its claims are directed to semiconductor structure rather than a method for making semiconductors. In the '758 application that resulted in the '513 patent, all originally filed claims, except claim 16, contained a limitation that the bottom of the groove must be within 1.0 micron of the PN junction (the "1.0 micron" limitation). Claim 16 contained the 0.1 micron limitation found in the claims of the '800 patent. Also, claim 8 as filed contained a limitation similar to the rounding limitation found in the claims of the '800 patent.

Prosecution of the '102 application, which resulted in the '800 patent, continued from its filing date in 1973 until February 10, 1977, when Examiner Saba suspended action on the application pending the outcome of an interference proceeding involving the '300 application. Prosecution of the '102 application did not resume until 1984. Meanwhile, prosecution of the '758 application proceeded without suspension.

2.

During prosecution of the '758 application, Examiner Larkins identified three prior art references—Peltzer, Murphy, and Sanders—that formed the basis for rejections under 35 U.S.C. §§ 102 and 103. In response, Li attempted to eliminate the three references as prior art by asserting that, in accordance with 35 U.S.C. § 120, his claims were entitled to the benefit of the filing date of either the application that resulted in the '714 patent or the application that resulted in the '109 patent. Examiner Larkins rejected Li's arguments, finding that the earlier patents did not disclose subject matter supporting the claims. In September 1979, Examiner Larkins issued a final rejection of all claims in the application.

Li appealed the final rejection to the PTO Board of Appeals (Board),[2] which also rejected his attempt to establish an earlier priority date. In a June 17, 1981 decision, the Board found that Table 1, which appeared in the written descriptions of both the '109 and '714 patents, did not support the 1.0 micron limitation. Joint App. at 945. Even if Table 1 supported the 1.0 micron limitation, the parent—the '300 application—did not contain or incorporate by reference Table 1. Joint App. at 946. Upon Li's request for reconsideration, the Board explained that Table 1 showed distances both less than and greater than 1.0 micron and that neither the '714 patent nor the '300 application placed "particular criticality ... upon the less than one micron feature." Joint App. at 960. Thus, the Board concluded that the claims of the '758 application were not entitled to the benefit of an earlier filing date, and that therefore Peltzer, Murphy, and Sanders were available as prior art references against the claims. Although the Board did not explicitly state that the earlier patents lacked support for the 0.1 micron

---

2. In 1984, Congress merged the Board of Appeals and the Board of Patent Interferences to create the Board of Patent Appeals and Interferences. Patent Law Amendments Act of 1984, Pub.L. No. 98–622, §§ 201–207, 98 Stat. 3383, 3386–89 (codified as amended in scattered sections of 35 U.S.C.).

limitation, it did so implicitly when it concluded that none of the claims, including claim 16 with the 0.1 micron limitation, were entitled to an earlier date. Furthermore, the reasoning behind the Board's decision applies equally to the 0.1 micron limitation and the 1.0 micron limitation— no prior patent or application placed any emphasis on the distance between the bottom of the groove and the PN junction.

The Board proceeded to sustain Examiner Larkins's § 102 rejection of claim 1 as anticipated by Peltzer, which the Board found discloses the 1.0 micron feature. Although the Board did not sustain Examiner Larkins's § 102 and § 103 rejections of other claims, the Board entered a new ground of rejection: some claims were rejected under § 103 as obvious in view of Peltzer, and some claims, including claim 16 with the 0.1 micron limitation, were rejected under § 103 as obvious in view of Sanders. The Board explicitly found the 1.0 micron limitation would have been obvious in view of Peltzer's disclosure of a groove extending to the PN junction; this reasoning would also render the 0.1 micron limitation obvious. It appears that the Board rejected claim 16 over Sanders rather than Peltzer because Sanders disclosed the particular shape of the groove that was claimed in addition to the 0.1 micron feature. Original claim 8, which included the rounding limitation, was ultimately allowed and issued as claim 3 in the '513 patent.

### 3.

When prosecution of the '102 application resumed in 1984, the interference apparently having been discontinued, Li amended some of the claims to include limitations on the distance between the bottom of the groove and the PN junction. In rejecting these claims, Examiner Saba stated that several references, including Peltzer, inherently disclosed such distance limitations. Joint App. at 639, 727. Numerous times during prosecution, Li expressly indicated that the written descriptions of the '109 and '714 patents, and specifically Table 1, supported the distance limitations.

Joint App. at 591-97, 599, 633. After Li amended the claims with distance limitations to include the 0.1 micron limitation, he continued to assert that his claims were entitled to either the 1965 filing date of the application for the '109 patent or the 1968 filing date of the application for the '714 patent, depending on the other limitations in each claim. Joint App. at 657-64, 767-68. These earlier priority dates were enough to overcome some of the cited references, including Peltzer, but not all of them. Li argued that the remaining prior art references did not sufficiently disclose the distance limitations. Joint App. at 746.

There is no written record of a disclosure to the PTO by Li of the Board's 1981 decision regarding priority dates in the '758 application. Li made reference to the '758 application only in a genealogy chart of related applications that he attached to the last supplemental amendment he filed. Joint App. at 777. Having accepted Li's argument that the claims of the '102 application were entitled to the benefit of an earlier filing date, Examiner Saba allowed the claims, stating that the primary reason for allowance was that the 0.1 micron limitation and the rounding limitation were not taught in the prior art available before the 1968 priority date. Joint App. at 780.

### 4.

When Li brought suit against Toshiba for infringement of the '800 patent, Toshiba raised the defense that the patent was unenforceable due to Li's inequitable conduct in concealing the Board's decision regarding the '758 application from Examiner Saba. After a bench trial on the issue, the district court held the '800 patent unenforceable. The district court found that Li did not adequately disclose the decision to the examiner and that Li further committed inequitable conduct by affirmatively and repeatedly arguing to the examiner that his claims were entitled to the benefit of the earlier filing dates. The district court found that the materiality require-

ment was met because Examiner Saba allowed the claims only after he was convinced that Li was entitled to the earlier filing dates. The court rejected Li's argument that the Board's decision did not apply to the 0.1 micron limitation. Finally, the district court inferred from the high degree of materiality and Li's affirmative misrepresentations that Li had the requisite deceptive intent.

### DISCUSSION

■ Applicants for patents have a duty to prosecute patent applications in the PTO with candor, good faith, and honesty. *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1826 (Fed.Cir.1995); *see also* 37 C.F.R. § 1.56. A breach of this duty, which breach can include affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information, coupled with an intent to deceive, constitutes inequitable conduct. *See Molins,* 48 F.3d at 1178, 33 USPQ2d at 1826. In determining whether inequitable conduct occurred, a trial court must determine whether the party asserting the inequitable conduct defense has shown by clear and convincing evidence that the alleged nondisclosure or misrepresentation occurred, that the nondisclosure or misrepresentation was material, and that the patent applicant acted with the intent to deceive the PTO. *Glaxo Inc. v. Novopharm Ltd.,* 52 F.3d 1043, 1048, 34 USPQ2d 1565, 1567 (Fed.Cir.1995). The nondisclosure or misrepresentation must meet threshold levels of both materiality and intent. *Molins,* 48 F.3d at 1178, 33 USPQ2d at 1826. We review all of these underlying factual determinations for clear error. *Glaxo,* 52 F.3d at 1048, 34 USPQ2d at 1567; *Molins,* 48 F.3d at 1178, 33 USPQ2d at 1827.

■ Once the threshold levels of materiality and intent have been established, the trial court must weigh materiality and intent to determine whether the equities warrant a conclusion that inequitable conduct occurred. *Id.* The more material the information misrepresented or withheld by the applicant, the less evidence of intent

will be required in order to find that inequitable conduct has occurred. *N.V. Akzo v. E.I. DuPont de Nemours,* 810 F.2d 1148, 1153, 1 USPQ2d 1704, 1708 (Fed.Cir. 1987). We review the trial court's ultimate determination of inequitable conduct under an abuse of discretion standard. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1388 (Fed.Cir.1988).

### 1. Nondisclosure and Misrepresentation

■ Toshiba's inequitable conduct claim arises from Li's alleged failure during prosecution of the '102 application to disclose the Board's decision that the claims of the '758 application were not entitled to the benefit of the filing date of any of Li's earlier applications. The district court concluded that Li failed to disclose the Board's decision and that he further committed inequitable conduct by affirmatively misrepresenting to Examiner Saba that the claims of the '102 application, all of which included the 0.1 micron limitation, were entitled to the 1965 or 1968 filing date of one of the earlier applications, even though he knew the Board had reached a contrary result with respect to claims of the '758 application.

Nothing in the '102 application's written prosecution record shows that Li disclosed directly to Examiner Saba that the Board had rendered a decision regarding the '758 application that might affect the priority date of the '102 claims. Although the genealogy chart filed by Li shows the chain of parent applications and related applications, including the '758 application, we agree with Toshiba and the district court that the chart does not adequately disclose the relevant information—the Board's decision regarding priority dates. The record shows that Li made reference to the genealogy chart in connection with a discussion of prior art cited during prosecution of the related applications. Unlike an applicant's disclosure of a prior art reference, the content of which is presumed to be before the examiner, *see In re Portola*

*Packaging, Inc.,* 110 F.3d 786, 790, 42 USPQ2d 1295, 1299 (Fed.Cir.1997), Li's submission of the genealogy chart, with reference to the '758 application only in the context of prior art cited in that application and with no mention of the Board's decision, was not sufficient to disclose the Board's decision to Examiner Saba. Moreover, in the same supplemental amendment to which Li attached the genealogy chart, Li reiterated his assertion that the claims were entitled to filing dates of parent applications, a statement inconsistent with the Board's decision that Li purportedly disclosed. We cannot say that the district court clearly erred in finding that there was no adequate written disclosure of the Board's decision.

Li also alleges that his patent attorney, Mr. Kavrukov, orally briefed Examiner Saba regarding the Board's decision. Before the district court, Li proffered only Kavrukov's testimony as evidence that Examiner Saba had discussed the Board's decision with Kavrukov and had told Kavrukov that he did not consider the decision relevant to prosecution of the claims in the '102 application. The PTO requires all business before it to be conducted, or at least documented, in writing. *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1439, 221 USPQ 97, 106 (Fed.Cir.1984) (citing 37 C.F.R. § 1.2). It is the responsibility of the applicant to ensure that the substance of any interview with the examiner is included in the written record of the application, unless the examiner indicates that he will do so. *See id.* (citing Manual of Patent Examining Procedure § 713.04). In view of our usual deference to the district court regarding witness credibility, *see Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1580, 27 USPQ2d

1836, 1842 (Fed.Cir.1993), and the lack of any reference in the written record to a conversation between Kavrukov and Saba regarding the Board's decision, we cannot say that the district court committed clear error in finding that Kavrukov's testimony was not credible and that there was no disclosure, written or oral, to Examiner Saba.

Moreover, the district court not only found that Li failed to disclose the Board's decision to Examiner Saba, it also found that Li affirmatively and repeatedly argued to Examiner Saba that the claims of the '102 application were entitled to the benefit of earlier filing dates. In view of the Board's decision that the 0.1 micron limitation was not supported by the earlier patents,[3] we agree with Toshiba and the district court that Li's repeated statements regarding earlier filing dates are properly characterized as affirmative misrepresentations. Thus, we discern no clear error in the district court's finding that, during prosecution of the application that matured into the '800 patent, Li engaged in a persistent course of nondisclosure and misrepresentation that may constitute inequitable conduct if the materiality and intent requirements are satisfied.

### 2. Materiality

■ Information is deemed material "if there is a 'substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent.'" *Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1440, 17 USPQ2d 1834, 1839 (Fed.Cir.1991) (quoting 37 C.F.R. § 1.56 (1989)).[4] Because the effective filing date of each claim in a

3. On appeal, Li argues that the '109 and '714 patents support the 0.1 micron limitation and that the Board's decision does not apply to the 0.1 micron limitation. The Board, however, implicitly found that the earlier patents did not support the 0.1 micron limitation when it concluded that no claims, including claim 16 with the 0.1 micron limitation, were entitled to the benefit of an earlier filing date.

The correctness of the Board's decision is not before us for review.

4. We recognize that this standard reflects an older PTO rule in effect at the time the patent-in-suit was prosecuted and that the current PTO rule defines materiality differently. *See Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1328 n. 3, 47 USPQ2d 1225, 1229 n. 3 (Fed.Cir.1998).

patent application determines which references are available as prior art for purposes of §§ 102 and 103, information regarding the effective filing date is of the utmost importance to an examiner. Consequently, an applicant's misrepresentation that he is entitled to the benefit of an earlier filing date is highly material.

In this case, the district court concluded that Examiner Saba allowed the claims of the '800 patent only after he was convinced that Li was entitled to an earlier filing date, and that therefore the Board's decision that similar claims in the '758 application were not entitled to the earlier date was material. While the district court may have overstated the examiner's position, it is true that Li's misrepresentations regarding priority dates eliminated from consideration the Peltzer reference, which Examiner Saba had found disclosed the 0.1 micron feature and which the Board effectively had found disclosed the 0.1 micron feature. Particularly in a case such as this, in which an applicant's misrepresentation and nondisclosure of priority date information eliminates a reference specifically cited by the examiner and previously found by the Board to disclose an important feature of the claimed invention, there is no doubt that such information is highly material. *Cf. Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1571, 220 USPQ 289, 300 (Fed.Cir.1983) ("[T]here is no room to argue that submission of false affidavits [to overcome prior art] is not material.").

Li's argument that the Peltzer reference is not material is misplaced. The relevant issue is the materiality of the priority date information, not the materiality of Peltzer. Li's false statements regarding priority dates are material because Li induced Examiner Saba's reliance on those statements during examination. *Cf. General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1411, 30 USPQ2d 1149, 1154 (Fed.Cir.1994) (finding a false statement that the patentee had conducted a prior art search to be material because it induced reliance by the PTO in granting a petition to make special). As a result of that reliance, Examiner Saba ultimately allowed the claims by considering only references with dates earlier than the priority dates asserted by Li. We cannot determine what the outcome of prosecution would have been in the absence of the examiner's reliance on Li's misrepresentations.

Even if the materiality of Peltzer were at issue, Li's conclusion that Peltzer is not material is erroneous. The Board clearly found that Peltzer disclosed the 1.0 micron feature when it sustained Examiner Larkins's § 102 rejection of claim 1. As discussed, the Board's reasoning would also lead to the finding that Peltzer disclosed the 0.1 micron feature. Thus, Peltzer is material because it discloses the 0.1 micron feature, which both Li and Examiner Saba considered to be an important limitation in the claims.

■ Finally, Li argues that because the claims of the '800 patent include the rounding limitation, they are patentable over the prior art even without the benefit of the earlier filing dates. For support, Li points to the Board's decision in the '758 application to allow claim 8, which contained the rounding limitation, and notes that the district court erroneously stated that the Board had found that Peltzer disclosed the rounding feature. While Li's contentions regarding the rounding limitation may be correct, they do not render immaterial the Board's decision regarding the 0.1 micron limitation. Information concealed from the PTO may be material even though it would not invalidate the patent. *See Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1213, 2 USPQ2d 2015, 2019 (Fed.Cir.1987) ("The simple fact is that a patent may be valid and yet be rendered unenforceable for misuse or inequitable conduct."). As stated, the test for materiality is whether a reasonable examiner would have considered the information important, not whether the information would conclusively decide the issue of patentability. *See A.B. Dick Co. v. Burroughs Corp.,* 798 F.2d 1392, 1397, 230 USPQ 849, 853 (Fed. Cir.1986) ("[T]he test for materiality is

*not* whether there is anticipation or obviousness but, rather, what a 'reasonable examiner would consider ... important in deciding whether to allow the application to issue as a patent.' ") (emphasis and alteration in original). As explained, Li's nondisclosure of the Board's decision and misrepresentation of priority dates easily satisfy this test. There is no clear error in the district court's finding that the Board's decision regarding priority dates was material.

### 3. Intent

 "Intent [to deceive the PTO] need not be proven by direct evidence. Indeed, '[d]irect proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances.' " *Baxter*, 149 F.3d at 1329, 47 USPQ2d at 1230 (quoting *LaBounty Mfg., Inc. v. USITC*, 958 F.2d 1066, 1076, 22 USPQ2d 1025, 1032 (Fed. Cir.1992)). When determining whether intent has been shown by clear and convincing evidence, a court must weigh all evidence, including evidence of good faith. *Baxter*, 149 F.3d at 1330, 47 USPQ2d at 1231.

The circumstances in this case support the district court's finding of intent. Li not only failed to disclose to Examiner Saba the Board's decision regarding priority dates, he also made numerous statements during prosecution of the '102 application that were contrary to the Board's decision. We can infer from Li's affirmative misrepresentations that Li deliberately concealed the Board's decision from Examiner Saba. *See Rohm*, 722 F.2d at 1571, 220 USPQ at 300 (inferring deceptive intent from submission of false affidavits to overcome prior art).

We are not persuaded by Li's arguments that his other actions demonstrate good faith and lack of deceptive intent. The genealogy chart that Li attached to a supplemental amendment did not sufficiently disclose the Board's decision and was not provided for the purpose of determining priority dates; thus, we do not see how the chart shows a lack of deceptive intent. Li also argues that his disclosure of the Board's decision during prosecution of a later application, filed after the '800 patent issued, is evidence that Li lacked deceptive intent. In *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 47 USPQ2d 1533 (Fed.Cir. 1998), upon which Li relies, this court found no deceptive intent when a patent applicant disclosed to the examiner of one application the copendency of a second application but failed to disclose the copendency to the examiner of the second application. In contrast, Li's disclosure of the Board's decision to the examiner of a third application, filed after the '102 application issued as the '800 patent, has no bearing on whether Li acted with deceptive intent during prosecution of the '102 application. Li's arguments are insufficient to overcome the inference of deceptive intent, and thus we perceive no clear error in the district court's finding that Li acted with the intent to deceive the PTO.

### 4. Inequitable Conduct

Having established that the district court committed no clear error in finding that Li's conduct met threshold levels of materiality and intent, we conclude that the district court did not abuse its discretion in determining that Li's persistent course of nondisclosure and misrepresentation constituted inequitable conduct. Accordingly, we affirm the district court's judgment that the '800 patent is unenforceable due to inequitable conduct.

### CONCLUSION

The decision of the district court is AFFIRMED.