NEWELL WINDOW FURNISHINGS, INC. and KIRSCH, INC., Plaintiffs–Appellants,

v.

SPRINGS WINDOW FASHIONS DIVISION, INC., Defendant/Cross–Appellant.

No. 00–1079, 00–1099.

United States Court of Appeals, Federal Circuit.

July 2, 2001.

Before MICHEL, SCHALL, and GAJARSA, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Newell Window Furnishings, Inc. and Kirsch, Inc. (collectively, "Newell") sued Springs Window Fashions Division, Inc., a

wholly-owned subsidiary of Springs Industries, Inc. ("Springs") for infringement of United States Patent Nos. 5,701,940 and 5,692,550 (the " '940 and '550 patents"), both directed to cellular window shades, in the United States District Court for the Northern District of Illinois. By the consent of both parties, the case was tried to a magistrate judge without a jury who entered both findings of fact and conclusions of law.[1] The court first found that Springs' Maestro cellular shade infringed claim 1 of the '940 patent and claim 1 of the '550 patent. *Newell Window Furnishings, Inc. v. Springs Window Fashions Div., Inc.*, 53 USPQ2d 1302, 1319 (N.D.Ill. 1999). However, the court also found both the '940 and the '550 patent unenforceable due to inequitable conduct. *Id.* at 1327–32. In addition, the court determined that claim 1 of the '940 patent was invalid by reason of anticipation, *id.* at 1323–24, and that claim 1 of the '550 patent was invalid by reason of obviousness, *id.* at 1325–26. These were the claims of the patents that were asserted by Newell against Springs. Newell appeals the district court's finding of inequitable conduct and invalidity with respect to both the '940 and the '550 patent. For its part, Springs cross-appeals the district court's finding of infringement of both patents and urges additional grounds to support the district court's finding of inequitable conduct. For the reasons set forth below, we *reverse* the district court's ruling of inequitable conduct, but we *affirm* the court's rulings of invalidity with respect to claim 1 of the '940 patent and claim 1 of the '550 patent. We *vacate* as moot the district court's rulings of infringement.

## DISCUSSION

### I. Inequitable Conduct

A. "Applicants for patents have a duty to prosecute patent applications with can-

dor, good faith, and honesty." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1826 (Fed.Cir.1995); *see also* 37 C.F.R. § 1.56. A breach of this duty by "affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information, coupled with an intent to deceive, constitutes inequitable conduct." *Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378, 56 USPQ2d 1681, 1684 (Fed.Cir.2000). The facts relating to inequitable conduct must be established by clear and convincing evidence. *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1261, 57 USPQ2d 1699, 1705 (Fed.Cir.2001). The ultimate determination of inequitable conduct is reviewed for an abuse of discretion, with the underlying factual determinations of materiality and intent reviewed for clear error. *Li Second Family*, 231 F.3d at 1378, 56 USPQ2d at 1685.

B. The inequitable conduct issue in this case grows out of prior litigation between Newell and Comfortex Corporation ("Comfortex"). In September of 1996, Newell sued Comfortex for infringement of Newell's United States Design Patent No. D 352,856 (the " '856 design patent"). The '856 design patent claims the design that is reflected in the inventions of the '940 and '550 patents. Newell alleged that Comfortex's "Solo" cellular shade infringed the '856 design patent. Eventually, the Comfortex litigation settled. The settlement included an agreement under which Comfortex would pay a graduated royalty under the '856 design patent and under which the royalty rate would increase as Comfortex's sales of the Solo increased (the "Licensing Agreement"). The parties additionally agreed that New-

---

1. We refer to the magistrate judge as the     "district court" or the "court."

ell would dismiss its suit against Comfortex and that a previous order in the case denying Newell's application for a preliminary injunction (the "PI Order") would be vacated.[2] Also as part of the settlement, the parties entered into a second agreement, pursuant to which Comfortex was granted a $25,000 credit against future royalty payments under the Licensing Agreement, in exchange for the licensing of certain Comfortex patents to Newell (the "Technology Sharing Agreement"). On August 27, 1997, a consent judgment was entered dismissing the Comfortex litigation (the "Consent Judgment"). The Consent Judgment stated, in part: "The '856 [design] patent is valid and enforceable."

On August 12, 1997, the examiner who was considering the application for the '550 patent issued a final rejection of the application on the ground that the claimed invention was unpatentable over certain prior art, specifically the Rosette. Newell responded to the rejection on September 15, 1997, by filing amendments pursuant to 37 C.F.R. § 1.116 and by arguing that the '550 patent's claims were valid in light of the Rosette. In particular, Newell argued that claim 1, as well as other claims, were valid over the Rosette due to the fact that the Consent Judgment included the statement that the '856 design patent was valid. Newell claimed that the Consent Judgment was evidence of the '856 design patent's validity over the Rosette, and asserted that there was a correlation between the subject matter covered by the '856 design patent and the '550 patent. Newell also claimed that the Licensing Agreement between Newell and Comfor-

tex was evidence of nonobviousness of the '550 patent. Newell, however, failed to disclose to the examiner either the PI Order or the Technology Sharing Agreement. On September 22, 1997, the examiner issued a notice of allowance for the '550 patent, and the patent issued on December 2, 1997. The '940 patent issued on December 30, 1997.

The district court concluded that Newell's failure to disclose the PI Order and the Technology Sharing Agreement to the examiner constituted inequitable conduct. Newell, 53 USPQ2d at 1332. The court reasoned that "insofar as [Newell] relied upon the [Comfortex] litigation to assert arguments of patentability, information that refutes or is inconsistent with those arguments is material under [37 C.F.R. 1.56(b)(2)(ii)]." Id. at 1330. The court found both the PI Order and the Technology Sharing Agreement inconsistent with Newell's arguments (i) that the Comfortex litigation was evidence of the '550 patent's validity over the Rosette and (ii) that the Licensing Agreement was evidence of the nonobviousness of the invention claimed in the '550 patent. Id. at 1331. The court also found that Newell "intended to mislead or deceive the examiner by withholding the [PI Order] and the [Technology Sharing Agreement] while relying upon both the [Consent Judgment] and the [Licensing Agreement] as evidence favorable to patentability." Id. at 1332.

■ C. On appeal, Newell challenges the district court's inequitable conduct ruling on two grounds. First, it contends that the PI Order and the Technology Sharing Agreement were not material.

---

2. In the PI Order, the district court noted that, in its view, there were "significant issues" as to whether the Solo shades infringed and whether the '856 design patent was valid because of prior art, which included a Comfortex shade called the "Rosette." The court

stated: "Together these questions concerning infringement and validity of the patent loom so large that the Court must conclude as a preliminary matter that it is unlikely that plaintiff will succeed on the merits." The PI Order apparently was never vacated.

Second, it argues that the district court erred in finding that Newell intended to deceive the examiner. We see no reason to disturb the district court's finding that the Pl Order and the Technology Sharing Agreement were material for purposes of the inequitable conduct analysis. However, we are unable to sustain the district court's finding of an intent to deceive.

We do not believe that the district court's finding of an "intentional scheme to mislead or deceive the examiner," *Newell,* 53 USPQ2d at 1332, is supported by the evidence, especially when it is borne in mind that Springs was required to prove the facts relating to inequitable conduct, such as intent, by clear and convincing evidence. First, beyond the timing of events, there is no indication that Newell's settlement of the Comfortex litigation was orchestrated in order to obtain an allowance of the '550 patent. Significantly, the district court did not rest its finding of a pattern of manipulation on the testimony of the individuals who were involved in the Comfortex litigation and the prosecution of the '550 patent. While "intent need not be proven by direct evidence," *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1329, 47 USPQ2d 1225, 1230 (Fed.Cir.1998), the lack of a finding that any testimony suggests an over-arching scheme to deceive the examiner hampers the district court's ultimate finding of intent. In addition, in this case, wrongful intent cannot be "inferred from clear and convincing evidence of the surrounding circumstances," *id.* Even if the '550 patent and the '940 patent had not been in prosecution during the Comfortex litigation, Newell still would have had a motive to obtain the Consent Judgment, including a statement of the '856 design patent's validity, as part of the settlement of the litigation. Such stip-

ulations are common in the settlement of patent cases. Furthermore, although the Technology Sharing Agreement reduced the significance of the Licensing Agreement, Newell still obtained the right to use Comfortex's technology in the field of cellular shades in exchange for the $25,000 credit that Comfortex received. Both parties benefited from the Licensing Agreement and the Technology Sharing Agreement, contradicting the district court's conclusion that Newell "effectively purchased" Comfortex's cooperation.

Finally, in its response to the final rejection of the '550 patent, Newell disclosed declarations and depositions from both Newell and Comfortex witnesses on the issue of the '856 design patent's validity. The district court failed to take this evidence into account. Failure to "weigh all the evidence, including evidence of good faith," establishes clear error. *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1384, 47 USPQ2d 1533, 1536 (Fed.Cir.1998).

We therefore conclude that, while the Pl Order and Technology Sharing Agreement were material, the district court erred in finding the threshold level of intent necessary to establish inequitable conduct. Inequitable conduct must be established by clear and convincing evidence, and in this case, such evidence was not before the district court to support a finding of intent.[3]

## II. Invalidity of the '940 and '550 patents

A. As noted above, the claims that Newell asserted against Springs and that the district court held to be invalid are claim 1 of the '940 patent and claim 1 of the '550 patent. Springs argued to the

---

**3.** We have considered and we reject the alternative grounds Springs urges on appeal to support the district court's finding of inequitable conduct.

district court that claim 1 of the '940 patent was anticipated by the Rosette. It also argued that claim 1 of the '550 patent was obvious in light of the Rosette combined with United States Patent No. 4,450,027 (the " '027 patent"). The '027 patent disclosed a single-cell cellular shade, and, of relevance to this suit, disclosed the application of two glue lines at the attachment zone, so that one cell attached to the cell above it in two distinct places. '027 patent, col. 7, II. 10–17.

The district court agreed with Springs, finding claim 1 of the '940 patent and claim 1 of the '550 patent invalid. *Newell*, 53 USPQ2d at 1323–26. The court first construed the phrase "cellular pleated shade member" in claim 1 of both patents as describing "a sample of cellular pleated fabric that contains three or more cells, with at least one of those cells exhibiting the physical characteristics described in the claim[s]." *Id.* at 1324–25. Armed with that construction, the court found that the Rosette anticipated the '940 patent because it met all of claim 1's limitations. *Id.* at 1324. The court next turned to claim 1 of the '550 patent, first noting that the Rosette did not anticipate claim 1 because the Rosette only had one attachment zone between each cell, while claim 1 required at least two. *Id.* at 1324–25. The court concluded, however, that it would have been obvious to one skilled in the art to apply the teachings found in the '027 patent, the use of multiple attachment zones between two cells, to the Rosette. *Id.* at 1325–26. The court considered, and dismissed, Newell's evidence of secondary considerations and concluded that claim 1 of the '550 patent was obvious. *Id.* at 1326.

B. On appeal, Newell argues that the district court's finding of invalidity of claim 1 of both patents is based on an improper claim construction of the phrase "cellular pleated shade member." Newell contends that this phrase limits the claims to a cellular shade member that is part of a complete shade, not a mere sample of shade material such as the Rosette. Therefore, Newell asserts, claim 1 of the '940 patent is not anticipated. Newell next argues that there was no evidence to support the district court's determination that claim 1 of the '550 patent was obvious because nothing suggests a motivation to modify the Rosette with the teachings of the '027 patent. Newell also cites its evidence regarding secondary considerations, such as long felt need and commercial success, as mandating a reversal of the district court's finding of obviousness.

To determine whether a patent claim is anticipated or obvious, it must first be construed. *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 714, 48 USPQ2d 1911, 1915 · (Fed.Cir.1998). The district court properly construed claim 1 of the '940 patent and claim 1 of the '550 patent to include a cellular pleated fabric that contains at least three or more cells, with at least one of those cells meeting the described claim limitations. The plain language of both claims supports the district court's construction. Claim 1 of the '940 patent requires "[a] cellular pleated shade member having a plurality of cells, at least one of the cells comprising" certain physical characteristics. '940 patent, col. 6, II. 27–28. Claim 1 of the '550 patent has a similar requirement—"[a] cellular pleated shade member having a plurality of interconnected cells, at least one of the cells comprising" certain physical characteristics. '550 patent, col. 5, II. 53–54. Both claims only require a "member" of a cellular pleated shade, not a complete cellular pleated shade. The claims also only require one cell within this member to have the described physical characteristics.

In addition, independent claims 11, 12, 18, 25, and 34 of the '940 patent and independent claims 10, 24, and 47 of the '550 patent, in contrast, describe a cellular shade "for covering a window," not simply the "shade member" that is described in claim 1 of both patents. These other independent claims expressly describe a complete shade assembly that covers a window. Under the doctrine of claim differentiation, "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987). The fact that such an explicit requirement for a complete cellular shade for covering a window is not found in claim 1 of either patent, but found in other claims of both patents, further supports the district court's claim construction.

■ After the claims in question are construed, the claims are compared to the prior art. *Key Pharms.*, 161 F.3d at 714, 48 USPQ2d at 1915. The district court did not clearly err in finding that the Rosette anticipated claim 1 of the '940 patent. As the district court properly found, the Rosette "was assembled from cellular shade fabric and contained three or more cells, at least one of which contained the physical structure described. It is also clear that the [R]osette met all of the remaining claim limitations." *Newell*, 53 USPQ2d at 1324. Newell's main argument against the court's finding of anticipation has been answered above; claim 1 does not require a shade member that is part of a complete shade assembly that covers a window. Therefore, the fact that the Rosette is not part of a complete shade assembly is irrelevant.

■ We also find no error in the district court's conclusion that claim 1 of the '550 patent is obvious. The district court defined the relevant scope of the prior art ("the art of cell structure" in cellular shade design), the differences between the prior art and the claimed invention ("the presence of multiple attachment zones, with at least one on each side of the longitudinal center of the cell wall"), and the level of skill in the art (a high school education and knowledge of existing products, patents, and prior art). *Id.* at 1325. The court went on to note that the '027 patent was within the relevant scope of the prior art, and that the '027 patent taught the difference between the claimed invention and the Rosette—the use of multiple glue lines (attachment zones) between cells in a single-cell shade design. *Id.* at 1326.

Contrary to Newell's contention, the district court properly found suggestions both in the prior art and the knowledge of those skilled in the art to modify the Rosette by using multiple attachment zones. First, the court determined that the '027 patent itself suggested to those skilled in the art that two glue lines, one on each side of the longitudinal center of the cell wall, could be used to attach one cell to the next. *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666, 57 USPQ2d 1161, 1167–68 (Fed.Cir. 2000) (noting that "the prior art references themselves" can provide a motivation to combine). The court also determined that cellular shade patents owned by Hunter Douglas, Inc., which included the '027 patent, were very important to those skilled in the art because those patents represented the "boundaries of innovation" in the industry and "posed [ ] a high risk of litigation" due to Hunter Douglas's aggressive assertion of the patents, *Newell*, 53 USPQ2d at 1325. The fact that the knowledge included in such patents, including the '027 patent, was "of special interest or importance in the field," is also evidence of a motivation to combine, *Ruiz*, 234 F.3d at 666, 57 USPQ2d at 1167–68.

Finally, we see no merit in Newell's argument that the district court erred when considering Newell's evidence of secondary considerations. The evidence indicated that the success, if any, of Newell's products was based on the cellular shade industry's need for a process for making single-cell shades that was an alternative to the Hunter Douglas process. Since claim 1 of the '550 patent describes a product as opposed to a process for making a product, the district court did not clearly err in finding little or no nexus. *See Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130, 56 USPQ2d 1456, 1463 (Fed.Cir.2000). Accordingly, we will not disturb the ruling of the district court that claim 1 of the '940 patent and claim 1 of the '550 patent are invalid.

### III.   Infringement

As noted above, Springs cross-appeals the district court's judgment of infringement. The district court found that Springs infringed claim 1 of the '940 patent and claim 1 of the '550 patent. *Newell,* 53 USPQ2d at 1319. Since we affirm the district court's finding that both claims are invalid, we vacate as moot the district court's findings of infringement. *See, e.g., Brown & Williamson,* 229 F.3d at 1122–23, 56 USPQ2d at 1465.

### CONCLUSION

For the foregoing reasons, we reverse the district court's judgment of inequitable conduct; affirm the court's judgment of invalidity of claim 1 of the '940 patent and claim 1 of the '550 patent; and vacate the court's judgment of infringement of claim 1 of the '940 patent and claim 1 of the '550 patent.

Each party shall bear its own costs.

GAJARSA, Circuit Judge, concurring.

I agree with the judgment and conclusions of the majority; however, I write separately only to clarify that the majority's decision to reverse the district court's judgment on the issue of intent to deceive is not to be taken as a suggestion that conduct, such as occurred here, cannot be the basis of a finding of inequitable conduct. Indeed, each case turns on its facts.

The majority concludes that the district court's finding of intent to deceive the PTO is clearly erroneous. In particular, the majority was not persuaded that Springs had proven that Newell, the successor in interest to Kirsch's application, orchestrated the settlement or withheld the Technology Sharing Agreement to obtain allowance of the patent. Because the district court must find that Newell presented clear and convincing evidence to support a finding of intent, I agree with the result reached by the majority.

Nevertheless, in my judgment, this result rests on the inadequacy of the district court's analysis. Had the district court properly weighed the evidence before it, we may have reached a different result. Thus, our reversal is in no way based upon a finding on appeal that Kirsch's conduct was acceptable, or to suggest that material information can be withheld without consequence.

Indeed, the majority agreed with the finding of the district court that both the Pl Order and the Technology Sharing Agreement were material to patentability. The circumstantial evidence was somewhat probative of deceptive intent. Because credibility determinations are virtually unreviewable, we would have been inclined to affirm had the court based its finding of deceptive intent on the credibility, or lack thereof, of Newell's witnesses. Furthermore, had the court properly weighed all of the evidence, including evidence of good

faith, I suggest that an affirmance of the district court's decision would have been in order. Because the court failed to articulate its consideration of all of the evidence critical to a finding of intent, we must reverse.